JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: HOAG URGENT CARE-TUSTIN, INC. | CASE NO. SACV 19-2485 MWF<br><br>ORDER RE: APPEAL FROM THE UNITED STATES BANKRUPTCY COURT'S SUMMARY JUDGMENT ORDER |

Before the Court is an appeal from the United States Bankruptcy Court (United States Bankruptcy Judge Theodor C. Albert). Appellant Your Neighborhood Urgent Care, LLC ("YNUC") appeals the bankruptcy court's order granting summary judgment in favor of Appellees Hoag Memorial Hospital Presbyterian ("Hoag") and Newport Healthcare Center, LLC ("Newport") and finding Appellant liable for conversion, issued on December 20, 2019 (the "Summary Judgment Order") and the resulting Judgment. (*See* Docket No. 1).

Appellant submitted its opening brief ("OB") on March 18, 2020. (Docket No. 16). Appellees Hoag and Newport submitted their answering brief ("AB") on May 18, 2020. (Docket No. 18).

The Court has read and considered the papers filed in this appeal, and held a telephonic hearing on February 12, 2021, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

1

The Summary Judgment Order is **AFFIRMED** *in part*, **REVERSED** *in part*, and **REMANDED** for further proceedings consistent with this Order. The bankruptcy court erred in holding that Appellees proved the second element of their conversion claim as a matter of law. A breach of contract alone is insufficient to prove conversion and triable issues exist as to whether YNUC committed a knowing or intentional act to wrongfully exerted dominion over Appellees' personal property. However, the bankruptcy court correctly applied the preponderance of the evidence standard, rather than the clear and convincing standard that Appellant espouses.

## I.  BACKGROUND

### A.  The Bankruptcy Case and the Missing Equipment

In late 2010, Appellee Newport subleased four commercial properties (the "Properties") to Appellant, which then sub-subleased the Properties to Hoag Urgent Care – Anaheim Hills, Inc., Hoag Urgent Care – Tustin, Inc., and Hoag Urgent Care – Huntington Harbour, Inc. (collectively, the "HUC Debtors"), which operated urgent care clinics at the Properties. (Appellees' Excerpts of Record ("Appellees ER") 1-22 (Docket No. 19-1)). Appellant YNUC is an affiliate and the former management company of the HUC Debtors. (Appellees ER 6). The HUC Debtors leased from Appellant, who leased from Newport, certain equipment used to operate the urgent care clinics (the "Equipment"). (Appellees ER 295).

On August 2, 2017, the HUC Debtors filed for chapter 11 bankruptcy. (Appellees ER 13).

On February 4, 2018, the HUC Debtors, Appellant, and Appellees entered into an agreement to terminate the sub and sub-subleases and surrender possession of the Properties to Appellees (the "Transition Agreement"). (Appellees ER 297-298). Pursuant to the Transition Agreement, the HUC Debtors were required to leave the Equipment at the Properties upon vacating the Properties. (Appellant's Excerpt of Record ("Appellant ER") 222-223 (Docket No. 17)).

By February 11, 2018, Appellant and the HUC Debtors had surrendered the Properties to Appellees, but several pieces of the Equipment were missing (the "Missing Equipment"). (Appellees ER 297-298, ¶ 42).

On March 15, 2018, Appellees filed a counterclaim against Appellant YNUC and the HUC Debtors alleging that they wrongfully converted the Missing Equipment. (Appellees ER 268-285).

### B. The Bankruptcy Court's Summary Judgment Order

On February 11, 2019, Appellees filed a motion for summary judgment on their conversion counterclaim. (Appellees ER 49-54). The bankruptcy court held a hearing on Appellees' summary judgment motion on May 2, 2019. (Appellees ER 305).

The bankruptcy court acknowledged the lack of evidence establishing which entity or entities had removed the Missing Equipment but concluded that this "uncertainty" did not create a disputed issue of material fact. (Appellees ER 313-314). The bankruptcy court found it undisputed that (1) the Missing Equipment was removed without authorization, and (2) YNUC had a duty under the express terms of the Transition Agreement to leave all of the Equipment in place upon vacating the Properties. (Appellees ER 313-314). Relying upon these undisputed facts, the bankruptcy court determined that Appellees had met their burden to show that YNUC had converted the Missing Equipment as a matter of law. (Appellees ER 313-314).

Specifically, the bankruptcy court concluded that YNUC presented no evidence creating a genuine dispute of material fact with respect to YNUC's failure to comply with the Transition Agreement. (Appellees ER 314). It determined that YNUC's self-serving and conclusory declaration of Dr. Amster, which stated that he was "not 'aware' of the taking of any equipment in a manner inconsistent with the Transition Agreement," did not create a disputed fact. (Appellees ER 314). At the hearing, the bankruptcy court rejected Appellant's argument that Dr. Amster's

3

Declaration created a triable issue because it gave no specific explanation about what happened to the Missing Equipment. (Appellant ER 868-869) (bankruptcy court explaining that there was no dispute of fact because Dr. Amster's Declaration did not say, for example, "We had a burglary last week, so I'm not sure what happened to it."). The bankruptcy court concluded that "[i]f anyone knows what happened to the Missing Equipment it must be Dr. Amster." (Appellees ER 314).

The bankruptcy court also rejected Appellant's argument that YNUC is a separate and distinct entity from the HUC Debtors and could not be held liable for HUC Debtors' failure to return the missing equipment. (Appellees ER 313-314). The court determined that the legally separate status of YNUC and the HUC Debtors was irrelevant because the Transition Agreement was signed by Dr. Robert Amster on behalf of both entities, and both entities appeared to be under the complete control of Dr. Amster. (Appellees ER 313-314).

The bankruptcy court held that Appellees had proved Appellant's conversion of the Missing Equipment as a matter of law, since no evidence in the record created a triable issue with respect to YNUC's breach of the Transition Agreement. (Appellees ER 314).

On May 30, 2019, the court granted Appellees' motion. (Appellant ER 640-642). On December 4, 2019, the parties stipulated to damages. (Appellant ER 1254-1259). On December 6, 2019, the bankruptcy court issued an order approving the stipulated damages amount and entering judgment in favor of Appellees on the conversion claim. (Appellant ER 1260-1262).

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a). When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit would use in reviewing a decision of a district court. *See In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997).

"A grant of summary judgment is reviewed de novo." *L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020) (citation omitted). A reviewing court must determine, "viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* (citation omitted). "Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Id.* (citation omitted) (internal quotation marks omitted).

**III.　DISCUSSION**

Appellant challenges the bankruptcy court's order only with respect to the second element of conversion, "the defendant's conversion by a wrongful act or disposition of property rights." (*See* OB at 8-11); (Appellees ER 311) (bankruptcy court stating the three elements of conversion, quoting *Lee v. Haney*, 61 Cal. 4th 1225, 1240 (2015)). Appellant contends that the bankruptcy court erred in granting summary judgment because Appellees produced no evidence that Appellant made an intentional, affirmative act that constituted a conversion of the Missing Equipment. (OB at 9-11). The Court agrees.

"The tort of conversion is an 'act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" *Multani v. Knight*, 23 Cal. App. 5th 837, 852, 233 Cal. Rptr. 3d 537 (2018) (citation

omitted). While conversion "does not require bad faith, knowledge, or even negligence," it ***does*** require "that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert*, 7 Cal. 5th 1141, 1158, 250 Cal. Rptr. 3d 779 (2019). "Because the act must be knowingly done, neither negligence, active or passive, nor a breach of contract, even though it result[s] in injury to, or loss of, specific property, constitutes a conversion." *Multani*, 23 Cal. App. 5th at 854.

"Negligence in caring for the goods ***is not an act of dominion*** over them such as is necessary to make the bailee liable as a converter." *Gonzales v. Pers. Storage, Inc.*, 56 Cal. App. 4th 464, 477, 65 Cal. Rptr. 2d 473 (1997) (emphasis in original) (offering as an example, "a warehouseman's negligence in causing a fire which destroyed the plaintiffs' goods will not support a conversion claim"). "[T]he California Supreme Court has stated that if redelivery is impossible because the goods have been lost or destroyed, either without fault on the part of the bailee or merely because of his negligence, there is no conversion." *Simonian v. Patterson*, 27 Cal. App. 4th 773, 781, 32 Cal. Rptr. 2d 722 (1994) (internal alterations and quotation marks omitted) (quoting *George v. Bekins Van & Storage Co.*, 33 Cal. 2d 834, 838, 205 P.2d 1037 (1949)).

"A conversion can occur when a ***willful*** failure to return property deprives the owner of possession." *Fearon v. Dep't of Corr.*, 162 Cal. App. 3d 1254, 1257, 209 Cal. Rptr. 309 (1984) (emphasis added) (citing *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 918, 114 Cal. Rptr. 622 (1974)). However, "[n]ot every failure to deliver property to the rightful owner constitutes a conversion. To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property." *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222, 7 Cal. Rptr. 3d 597 (2003) (internal citation and quotation marks omitted).

Under California law, YNUC's breach of the Transition Agreement by failing to return the Missing Equipment, without more, cannot support a conversion claim. *See Multani*, 23 Cal. App. 5th at 854 (explaining that a breach of contract which results in loss of property does not constitute a conversion). The California jury instruction on conversion confirms that a mere failure to return property in violation of a contract is insufficient. *See* Judicial Council of California Civil Jury Instruction 2100 (February 2021), Conversion No. 2100. An element of the tort of conversion requires a plaintiff to prove that the defendant "substantially interfered with [the plaintiff's] property by **knowingly or intentionally**" committing one of the following acts: (1) taking possession of the property; (2) preventing the plaintiff from accessing the property; (3) destroying the property; or (4) refusing to return the property after the plaintiff demanded its return. CACI No. 2100 (emphasis added).

The question, then, is whether the circumstantial evidence alone — i.e. that the Equipment was missing when YNUC returned possession of the Properties to Appellees — Proves YNUC's knowing or intentional conversion as a matter of law.

*Samm v. Martin*, 940 A.2d 138, 141 (D.C. 2007) is instructive on this point. In *Samm*, the appellant brought a conversion claim against the desk clerks in her apartment building, alleging that they took personal items from her apartment after she gave them a key and asked them to water her plants while she was out of town. 940 A.2d at 138-39. The trial court granted summary judgment in favor of the desk clerks and the appellate court reversed. *Id.* at 139. The court determined that summary judgment was improper because the appellant had produced sufficient evidence to support an inference of conversion, including that she had seen the desk clerks in possession of missing items that she recognized as her own and that the thefts stopped after she changed the locks to her apartment. *Id.* The *Samm* court noted that "[a]lthough the individual defendants flatly denied appellant's accusations, their contending testimony created a dispute on a material fact — in this case, a matter of credibility — that is for the fact finder to resolve." *Id.* at 141.

The plaintiff in *Samm* arguably had stronger evidence of conversion than Appellees had here, since the defendants in *Samm* were allegedly seen in possession of the converted goods.  In contrast here, and four to six weeks had passed between the initial walkthrough of the Properties when the Equipment was present, and Appellees' repossession of the Properties, when the Equipment was missing, (Hearing Transcript at 8:3-8); no evidence in the record establishes that Appellant was ever in possession of the Equipment after vacating the Properties.  While the fact that YNUC was the last known possessor of the Equipment certainly creates a reasonable inference that YNUC took or destroyed the Equipment, Appellees were not entitled to such an inference as the party moving for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

In the absence of any direct evidence that YNUC ***knowingly or intentionally*** took or destroyed the Equipment, YNUC was not required to put forth evidence of an alternative explanation as to what happened to the missing equipment to avoid summary judgment.  Rather, as in *Samm*, Dr. Amster's Declaration stating that he was not aware of any taking of the Equipment created a dispute of material fact as to the parties' credibility.  Of course, without evidence showing that a third party could have accessed the premises after the walkthrough, the trier of fact may find YNUC's defense ludicrous.  But it is up to the trier of fact, not the bankruptcy court on summary judgment, to decide which party to believe.  *See Banks v. Hayward*, 216 F.3d 1082, 1082 (9th Cir. 2000) (courts "may not make credibility determinations or weigh conflicting evidence" on a motion for summary judgment).

Appellant also contends that the bankruptcy court erred by determining that the evidentiary standard to prove conversion is preponderance rather than clear and convincing evidence.  (OB at 7-8).

In California, the general rule is that issues of fact in civil cases are determined by a preponderance of the evidence, "[e]xcept as otherwise provided by law[.]" *Weiner v. Fleischman*, 54 Cal. 3d 476, 483, 286 Cal. Rptr. 40 (1991) (citing Evidence Code § 115) (holding that trial court committed reversible error by instructing the jury that plaintiff had to establish the existence of a partnership agreement by clear and convincing evidence, rather than by a preponderance of the evidence). Appellant points to no California statute or opinion requiring the tort of conversion to be established by clear and convincing evidence. Because no "constitutional, statutory or decisional law (i.e., case law) requires a burden of proof higher than preponderance of the evidence to establish [conversion]," *see id.*, Appellant's argument must be rejected. The portion of the bankruptcy court's Summary Judgment Order applying the preponderance standard is **AFFIRMED**.

### IV. CONCLUSION

For the reasons stated above, the bankruptcy court's Summary Judgment Order and the Judgment thereon are **REVERSED** as to the second element of conversion and **REMANDED** for further proceedings consistent with this Order. The portion of the bankruptcy court's Summary Judgment Order applying the preponderance standard is **AFFIRMED**.

IT IS SO ORDERED.

DATED: March 26, 2021.

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court